IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ACADIA INSURANCE COMPANY**                                           **PLAINTIFF**

v.                                                   **CAUSE NO. 1:16CV182-LG-RHW**

**PEARL RIVER COMMUNITY COLLEGE and
DONNA P. GREEN, Guardian Ad Litem for
L.M.S., a minor**                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

BEFORE THE COURT is the plaintiff's Motion [24] for Judgment on the Pleadings, filed pursuant to Fed. R. Civ. P. 12(c). Acadia Insurance Company requests a declaratory judgment that it does not owe any duties to the defendants for claims made by Donna P. Green as guardian ad litem for L.M.S. Green brought the underlying complaint against Pearl River Community College in the Circuit Court of Pearl River County after L.M.S. suffered a sexual assault and rape on the PRCC campus. Acadia asserts that the policy of insurance it issued excludes coverage for the injuries alleged by Green. The issues have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that the Motion should be granted. Acadia has shown that the policy of insurance excludes coverage for the injuries alleged in the underlying action. Accordingly, Acadia owes no duty to defend or indemnify Pearl River Community College.

### BACKGROUND

According to the allegations in the underlying lawsuit filed by Green against

Pearl River Community College (Am. Compl. Ex. 4, ECF No. 15-4), L.M.S. was a 19-year-old student living in a dormitory on the PRCC Poplarville campus when she was sexually abused and molested by another PRCC student, LaDerrick Scott. Green alleges that in 2013, Scott was recruited by PRCC basketball coaches to play basketball for PRCC on an athletic scholarship. Scott was admitted to PRCC despite not being eligible to attend college. Green alleges that PRCC should have known of Scott's propensity for violence from his high school records. Further, Scott was arrested for possession of marijuana twice within six weeks in the fall of 2014, and tested positive for marijuana use in the interim. Nevertheless, he suffered no consequences.

Green alleges that in the early morning hours of February 8, 2015, Scott was observed by the PRCC women's basketball coach in the hallway of L.M.S.'s all-woman dormitory. Even though men were prohibited from being in the dormitory after ten o'clock p.m., the basketball coach did nothing about Scott's presence there. Further, PRCC failed to notice that the doors to the dormitory were not securely fastened or locked. While he was in the dormitory, Scott entered L.M.S.'s locked room using an access card he had somehow obtained. He then "proceeded to terrorize and threaten Plaintiff's minor and then to forcibly and repeatedly sexually assault and rape the Plaintiff's minor before leaving Room 203 with threats of further bodily harm if the Plaintiff's minor was to follow him." (*Id.* at 10).

Green's claim against PRCC is for negligence, which she alleges PRCC committed by, *inter alia*, failing to keep the campus and dormitory safe; failing to

dismiss Scott from PRCC and the basketball team after he tested positive for marijuana use; improperly recruiting Scott; failing to take action when Scott was observed in the female dorm after hours; failing to properly secure the premises; and failing to follow its own safety policies and procedures. (*Id*. at 12-15). Green alleges that PRCC's negligence proximately caused L.M.S. to be sexually assaulted and raped.

Acadia "extended a defense under a reservation of all rights to PRCC," (Am. Compl. 3, ECF No. 15), and filed this lawsuit for declaratory judgment. Acadia now requests a judgment pursuant to Federal Rule of Civil Procedure 12.

## DISCUSSION

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (citation and brackets omitted). The Court "accept[s] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). While the Court will generally not consider matters outside the pleadings in deciding a 12(b)(6) motion, the Fifth Circuit has stated that "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454,

461 n.9 (5th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The insurance policy and underlying complaint at issue here are the subject of and attached to the Acadia's Amended Complaint. Accordingly, those documents may be considered in connection with this Motion.

**The Duties to Defend and Indemnify**

Under Mississippi law, the determination of whether an insurance company has a duty to defend depends upon the language of the policy as compared to the allegations of the complaint in the underlying action. *See U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002); *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997). "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. However, no duty to defend arises when the claims fall outside the policy's coverage." *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 970 (Miss. 2015) (quoting *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006)). An insurer's "duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *W.R. Berkley Corp. v. Rea's Country Lane Constr., Inc.*, 140 So. 3d 437, 442 (Miss. Ct. App. 2013) (quoting *Titan Indem. Co. v. Pope*, 876 So. 2d 1096, 1101 (Miss. 2004)). The insurer has an "absolute duty to defend a complaint which contains allegations covered by

the language of the policy," independent from its duty to indemnify which is determined once the facts have been developed to establish whether the conduct of the insured giving rise to the claim falls under or outside the coverage afforded by the policy. *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996).

Acadia contends that the Abuse or Molestation Endorsement to the policy excludes coverage for the plaintiffs' injuries. The Endorsement modifies the general liability coverage for "occurrences" and reads:

> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:
>
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of the insured, or
>
> 2. The negligent:
>
>    a. Employment;
>
>    b. Investigation;
>
>    c. Supervision;
>
>    d. Reporting to the proper authorities, or failure to so report; or
>
>    e. Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

(Am. Compl. Ex. 2, ECF No. 15-2 at 108).

Acadia contends that the claims in the underlying lawsuit all originate from

or arise out of the allegation that "LaDerrick Scott proceeded to terrorize and threaten Plaintiff's minor and then to forcibly and repeatedly sexually assault and rape the Plaintiff's minor before leaving Room 203 with threats of further bodily harm if the Plaintiff's minor was to follow him." (Am. Compl. Ex. 4 at 10, ECF No. 15-4). Acadia argues that Scott's conduct amounts to actual and/or threatened abuse or molestation, and claims arising from that conduct are excluded from coverage by the Abuse or Molestation Endorsement.

Acadia cites a number of cases where the language of the Abuse or Molestation Endorsement has been found to be clear and unambiguous, including two from Mississippi: *Lincoln County School District v. Doe*, 749 So. 2d 943 (Miss. 1999), and *Employers Mutual Casualty Co. v. Raddin*, No. 5:10cv137 (DCB) (RHW), 2012 WL 1098624 (S.D. Miss. Mar. 30, 2012). In these cases, the court found no coverage was available for injuries caused by a sexual assault on a student by another student, *Lincoln Cty. Sch. Dist.*, 749 So. 2d at 946, or for injuries caused by unauthorized physical examinations conducted at a medical clinic. *Raddin*, 2012 WL 1098624, at * 13. Additionally, this Court has found the Endorsement language to exclude coverage for injuries caused by abuse of a young child by the proprietor of a daycare. *Maryland Cas. Co. v. Nestle*, No. 1:09cv644-LG-RHW, 2010 WL 3735756, at *3 (S.D. Miss. Sept. 17, 2010). Courts in many other jurisdictions have held similarly. *See, e.g., Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 95 (1st Cir. 2012) (underlying suit alleged child in the care of the insureds as a long-term patient was abused by adoptive parents); *Nautilus Ins. Co. v. Our Camp Inc.*, 136 F. App'x 134,

138 (10th Cir. 2005) (underlying suit alleged child attending insured's summer camp was sexually abused by co-camper); *Cmty. Action for Greater Middlesex Cty., Inc.v. Am. All. Ins. Co.* v, 757 A.2d 1074, 1082-83 (Conn. 2000) (underlying suit alleged sexual molestation of student at insured's preschool by other students).

PRCC argues that the first paragraph of the Endorsement does not apply because L.M.S. was not in PRCC's custody or control, and there is a question of fact regarding whether L.M.S. was under PRCC's care. Green argues that "[t]he allegations of the underlying complaint . . . assert claims against PRCC for its own active negligence which resulted in injury to L.M.S." (Green Resp. 14, ECF No. 29). Neither Defendant contends that the language of the Endorsement is ambiguous, and the Court finds it is not.

a. Care, Custody, or Control

PRCC argues that as a nineteen year old, L.M.S. had freedom of movement on and off the campus, and this is a critical distinction from the cases interpreting the Endorsement that involve young children, some with special needs. PRCC cites an unreported Connecticut state court decision finding that women in their late teens or twenties, who had gone to the home of a police officer who took nude photographs of them, were always free to leave and therefore were not in his "care, custody and control." *Conn. Ins. Guar. Ass'n v. Daigle*, No. CV054013240S, 2007 WL 1976023, at *3 (Conn. Super. Ct. June 12, 2007). The opinion is unpersuasive, as the policy language in that case is phrased in the conjunctive ("care, custody *and* control") rather than the disjunctive as in this case, and the court does not cite any

authority for its conclusion.

The Eighth Circuit Court of Appeals has addressed PRCC's argument in a case involving sexual abuse of a parishioner by a priest. *McAuliffe v. N. Ins. Co. of N.Y.*, 69 F.3d 277 (8th Cir. 1995). The court stated

> [The insured] also contends the exclusion does not apply because the parishioner was not in [the priest's] "care, custody or control." [The insured] argues this language only encompasses the supervision of minors. We disagree. There is no language in the exclusion that limits its scope to minors. [The priest] was counseling the parishioner on a number of personal and spiritual issues, and we conclude the parishioner was in [the priest's] care when the abuse occurred.

*Id*. at 279. Accordingly, L.M.S.'s age does not determine whether she was in the care, custody or control of PRCC.

The terms "care," "custody" and "control" are not given special meanings in the policy, and therefore the Court must give them their ordinary meaning. *See Minn. Life*, 164 So. at 968. The dictionary definition of "care" most applicable to this case is "charge, supervision." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/charge (last visited February 16, 2017). "Custody" means "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority," while "control" means "to exercise restraining or directing influence over; to have power over." *Id*., https://www.merriam-webster.com/dictionary/custody; https://www.merriam-webster.com/dictionary/control.

To be in someone's "care" does not require physical custody or control of the person. The parishioner in the *McAuliffe* case cited above was in the care of the

priest who abused her during counseling sessions in the rectory. *McAuliffe*, 69 F.3d at 279. Also, the First Circuit Court of Appeals found that the plain meaning of "care" included a child receiving bi-weekly, outpatient services from a social services provider. *Valley Forge Ins. Co. v. Field*, 670 F.3d 93, 104-05 (1st Cir. 2012).

In the Court's view, the allegations of the underlying complaint establish that L.M.S. was under the care, custody or control of PRCC. Green's allegations include that PRCC had many policies, procedures, rules and regulations concerning the living conditions in the dormitories. For example, Green alleges that only residents or escorted visitors are allowed inside the dormitories; activities are visually monitored by staff; opposite gender visitation is limited in time and location; the dormitories close for five hours each night; and any person attempting to enter the dorm during closed hours faces dismissal from PRCC. (Am. Compl. Ex. 4, at 4-5, ECF No. 15-4). These allegations show that PRCC exercised substantial, supervisory control over L.M.S.'s living conditions and freedom of movement, and are therefore adequate to show that L.M.S. was in the care, custody or control of PRCC at the time of sexual assault.

b. Negligence Claims

Green objects to Acadia's assertion that the Endorsement excludes coverage for all claims in the underlying complaint because they arise or originate from the sexual assault. She argues that the *Raddin* and *Lincoln County* cases can be distinguished and should not be relied upon in this case. She asserts that in *Raddin*, the claim against the employer was based on its vicarious liability for the

-9-

intentional act of its employee. In contrast, her claims against PRCC are for "its own active negligence which resulted in injury to L.M.S." (Green Resp. 14, ECF No. 29). Green also argues that the *Lincoln* court did not engage in a lengthy or detailed discussion of the facts, and the case generally "did not involve the broader duty to defend as is implicated" in this case. (*Id.* at 11). Green argues that her underlying complaint "is based on PRCC's numerous acts of negligence, from the recruitment and enrollment of LaDerrick Scott, and going forward to February 8, 2015. Simply put, PRCC's conduct is a covered "occurrence" from the standpoint of PRCC, the insured." (*Id.* at 13).

      The Court does not agree with Green's characterization of the *Lincoln County* case. The court analyzed the same Abuse and Molestation Exclusion as that at issue here to determine if there was coverage for injuries resulting from one student's rape of another student on school premises. *Lincoln Cty.*, 749 So. 2d at 945. Determining whether the injuries were covered or excluded by the policy was necessary before the court could answer the sovereign immunity question. (*Id.* (¶9)). To the extent that the issues overlap with this case, *Lincoln County* is helpful.

      *Raddin* does involve an employee/employer relationship in which claims of negligence, negligent hiring, negligent training, negligent supervision, negligent entrustment, and negligent retention were brought against the employer based on actions of the employee. *Raddin*, 2012 WL 1098624, at *9. But the court noted that

the employer/employee relationship was irrelevant to its analysis, stating that "[e]ven if the Underlying Defendants are not employers or supervisors of [the tortfeasor], claims of negligent entrustment, negligent supervision, and failure to train are not recognized as 'occurrences.'" *Id.* at *10. The court cited *American National General Insurance Company v. Ryan*, 274 F.3d 319 (5th Cir. 2001), for the proposition that "an occurrence-based policy provides no coverage to any third party for claims related to and interdependent on intentional conduct." *Id.* (citing *Ryan*, 274 F.3d at 325).

The "active negligence" Green alleges against PRCC is related to and interdependent on Scott's intentional conduct. Green would have no claim against PRCC were it not for the sexual assault by Scott, and "[a]n insurer has no duty to defend or to indemnify its insureds against claims that could not be brought absent the underlying and excluded tortious conduct." *Ryan*, 274 F.3d at 325 (quoting *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 371 (5th Cir. 1998)); *see also Our Camp Inc.*, 136 F. App'x at 138 ("even assuming that Our Camp's actions resulted in additional injury to Michael, the exclusionary language is broadly written and the underlying complaint itself links Michael's injuries to the abuse. Thus, any additional injury in this case "arose out of" the original abuse); *Insights Trading Grp., LLC v. Fed. Ins. Co.*, No. CIV.A. RDB-10-340, 2010 WL 2696750, at *5 (D. Md. July 6, 2010) ("the alleged sexual assault was the instrumentality and the but for cause of the injury, therefore the exclusion must apply regardless of any supplemental causes or

theories that may be cited in the underlying case"). For this reason, Green's negligence claims do not establish an injury that is within coverage under the policy.

## CONCLUSION

Acadia has shown that it is entitled to a declaratory judgment that it is not obligated to provide a defense for its insured in the underlying lawsuit brought by Green on behalf of L.M.S. Because the duty to defend is broader than the duty to indemnify, it necessarily follows that Acadia also has no duty of indemnification.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the plaintiff Acadia Insurance Company's Motion [24] for Judgment on the Pleadings is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff is granted a declaratory judgment that it does not owe any duties to the defendants for claims made by Donna P. Green as guardian ad litem for L.M.S.

**SO ORDERED AND ADJUDGED** this the 21st day of February, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE